**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Danielle Hines

    v.                                         Civil No. 11-cv-184-PB

Michael J. Astrue, Commissioner,
Social Security Administration

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Danielle Hines moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that the decision of the Commissioner, as announced by the Administrative Law Judge ("ALJ"), be affirmed.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document no. 17.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Over the past seven years, Hines has suffered from various physical and mental conditions including thyroid cancer, a panic disorder, degenerative disc disease, diabetes, and fibromyalgia.

In her function report, she made several references to frequent
anxiety.

Presumably as a result of those references, and her
allegations of disabling anxiety, Hines was referred for a
consultative psychological examination, performed by Dr. Richard
Root.  After examining Hines, Dr. Root reported the following
relevant opinions regarding her then-current level of
functioning:

> B.  Social functioning: . . . Ms. Hines has the
> capacity to form and maintain relationships with . . .
> supervisors . . . in normal situations, including
> normal . . . work-related situations.
>
> C.  Understanding and memory: . . . Ms. Hines has the
> capacity to understand and remember moderately complex
> instructions and deal with moderately complex work-
> like procedures.  She would need more support and
> structure in more complicated situations, particularly
> ones that might draw upon her learning disability by
> history.  However, she would appear to be able to
> handle similar types of work situations from a
> psychological standpoint that she had before her
> physical medical problems.
>
> D.  Concentration and task completion: . . . Ms. Hines
> would be able to attend and to complete tasks in a
> supportive structured setting.  In some social
> settings she would have more difficulty in terms of
> completing tasks, particularly ones where there [are]
> significant levels of emotionality and more situations
> where in she begins to develop panic attacks, wherein
> the situation was demanding and nonaccommodating.
>
> E.  Reaction to Stress, Adaptation to work-like
> situations: . . . Ms. Hines has the capacity to make
> simple direct decisions, maintain attendance, and
> maintain a schedule, and interact appropriately with

> peers and supervisors in a work situation generally.
> In a demanding work situation, she may have more
> difficulties, particularly if her panic attacks were
> to emerge.  However, she does have skills to manage
> these and I think in a supportive structured setting,
> she would do reasonably adequately in this regard.

Administrative Transcript (hereinafter "Tr.") 398.  Dr. Root

made the following diagnoses on Axis I:

> Panic attacks without agoraphobia.
> Rule out Mood Disorder, secondary to medical problems.
> Rule out Learning Disorder.
> Rule out Pain Disorder with psychological and physical
> factors.

Tr. 398-99.

About a month after Dr. Root completed his psychological

profile, state-agency consultant Dr. Edward Martin completed

both a Psychiatric Review Technique ("PRT") and a Mental

Residual Functional Capacity ("RFC") Assessment on Hines.  In

the PRT, Dr. Martin's rating of Hines's functional limitations

was based on her anxiety related disorder.  With respect to the

"B" criteria of the listings, he determined that she had: (1) no

restrictions on her activities of daily living; (2) mild

difficulties in maintaining social functioning; (3) moderate

difficulties in maintaining concentration, persistence, or pace;

and (4) no episodes of decompensation of extended duration.  See

Tr. 410.

In Part I of his RFC assessment form, titled "Summary Conclusions," Dr. Martin indicated that for eighteen of the twenty listed activities, Hines was not significantly limited. He did find that she was moderately limited in her "ability to carry out detailed instructions" and her "ability to maintain attention and concentration for extended periods."  Tr. 414. After completing the Summary Conclusions section of the form, Dr. Martin made a functional capacity assessment that provides, in pertinent part:

> Despite her difficulties, the claimant remains able to remember locations and work like procedures, as well as to understand, remember, and carry out short and simple instructions.  Although she does have some difficulties in terms of concentration and persistence on task, in a simple job situation, with clear expectations, and reasonable supervision, she is able to maintain attention on task over extended periods and to perform activities within a schedule.  She is able to sustain an ordinary routine without special supervision, and she can relate adequately to others. In such a work environment, the claimant is able to complete a normal workday and workweek without an undue number of interruptions from psychological symptoms.  She does have difficulties in stress tolerance, and is able to respond appropriately only to simple and routine changes in a work setting. Allegations are credible.  Opinions of CE examiner [i.e., Dr. Root] are given weight.

Tr. 416.

After conducting a hearing at which he did not take testimony from a vocational expert ("VE"), the ALJ issued a

decision that includes the following relevant findings of fact
and conclusions of law:

> 3.  The claimant has the following severe impairments:
> thyroid cancer, a panic disorder, degenerative disc
> disease and diabetes (20 CFR 404.1520(c) and
> 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) but has
> moderate limitations in her ability to carry out
> detailed instructions and maintain attention and
> concentration for extended periods.
>
> . . . .
>
> 6.  The claimant is unable to perform any past
> relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 10.  Considering the claimant's age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20 CFR
> 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 10, 11, 12, 13, 14.  In explaining his RFC assessment, the
ALJ expressly adopted Dr. Martin's determination that Hines had
"moderate limitations in her ability to carry out detailed

instructions and maintain attention and concentration for

extended periods." Tr. 12.  More specifically, the ALJ wrote:

> He [Dr. Martin] noted also that despite her
> difficulties, the claimant remains able to remember
> locations and work like procedures and understand,
> remember, and carry out short and simple instructions.
> In a simple job situation, with clear expectations and
> reasonable supervision, she is able to maintain
> attention on tasks over extended periods and perform
> activities within a schedule.  She is able to sustain
> an ordinary routine without special supervision and
> can relate adequately to others.  In such a work
> environment, the claimant can complete a normal
> workday and workweek without an undue number of
> interruptions from psychological symptoms.  She has
> difficulties in stress tolerance but is able to
> respond appropriately to simple and routine changes.

Tr. 12.  The ALJ also characterized Dr. Root's assessment as

credible, noted that Dr. Martin incorporated it into his own

RFC, and described it this way:

> The psychologist assessed that the claimant would be
> able to attend to and complete tasks in a supportive
> structured setting[ ].  In some social settings she
> would have more difficulty completing tasks,
> particularly ones which precipitate her attacks.  She
> had the capacity to make simple direct decisions,
> maintain attendance, maintain a schedule, and interact
> appropriately with peers and supervisors.  In a
> demanding work situation, she may have difficulties if
> she had panic attacks but she did have skills to
> manage the attacks.  He felt in a supportive
> structured setting she would do adequately.

Tr. 13 (citation to the record omitted).  Finally, in reaching

his determination that a significant number of jobs exist that

Hines can perform, the ALJ stated that her "additional

[nonexertional] limitations have little or no effect on the occupational base of unskilled light work." Tr. 14. On that basis, the ALJ used the Social Security Administration's medical-vocational guidelines as a framework for finding that Hines was not disabled.

## Discussion

According to Hines, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) improperly formulated her RFC; (2) relied on the medical-vocational guidelines rather than taking testimony from a VE; (3) made an inadequate credibility assessment; and (4) incorrectly determined that her fibromyalgia was not a severe impairment.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether Hines was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his [her] physical or mental impairment or impairments are of such severity that he [she] is not only unable to do his [her] previous work but cannot, considering his [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [she] lives, or whether a specific job vacancy exists for him [her], or whether he [she] would be hired if he [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

To determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).  If the [claimant's] limitations are
> exclusively exertional, then the Commissioner can meet
> her burden through the use of a chart contained in the
> Social Security regulations.  20 C.F.R. § 416.969;
> Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
> subpt. P, App. 2, tables 1-3 (2001), cited in 20
> C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
> (1983).  "The Grid," as it is known, consists of a

11

matrix of the [claimant's] exertional capacity, age, education, and work experience.  If the facts of the [claimant's] situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However, if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001).  See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

[i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Hines's Arguments

As noted, Hines advances four arguments in favor of remanding this case.  The court considers each argument in turn.

### 1. The ALJ's RFC

Hines first argues that the ALJ erred by formulating an RFC
based on Dr. Martin's Summary Conclusions, <u>see</u> Tr. 414-15,
rather than his narrative Functional Capacity Assessment, <u>see</u>
Tr. 416, and by declining to adopt Dr. Martin's RFC assessment.
The Commissioner contends that the ALJ did, in fact, adopt Dr.
Martin's RFC assessment in full, and that a remand for the
purpose of allowing the ALJ to restate his RFC finding would be
an empty exercise.  The court agrees.

There is nothing anywhere in the ALJ's decision to suggest
that he rejected any part of Dr. Martin's RFC assessment.  In
any event, in the section that follows, the court construes the
ALJ's decision as adopting Dr. Martin's assessment in full.
Accordingly, Hines's first argument offers no basis for a
remand.

### 2. Reliance on the Medical-Vocational Guidelines

Hines argues that the ALJ erred by determining, without
input from a VE, that her nonexertional "limitations [had]
little or no effect on the occupational base of unskilled light
work," Tr. 14.  She asserts that the occupational base for
unskilled light work she can perform is reduced by the moderate
limitations in concentration, persistence, and pace identified

in Dr. Martin's PRT, coupled with "[t]he number and seriousness of [her] limitations."  Mot. to Reverse (doc. no. 9), at 7. Hines also notes the ALJ's references to: (1) her need for short and simple instructions; (2) her need for a simple job situation with clear expectations and reasonable supervision as a prerequisite to maintaining attention on tasks over extended periods and performing within a schedule; and (3) her ability to respond appropriately only to simple and routine changes, due to difficulties in stress tolerance.

The Commissioner contends that it was reasonable for the ALJ to determine that Hines's nonexertional limitations had little effect on the occupational base because: (1) a finding of moderate limitations in concentration, persistence, or pace does not necessarily require VE testimony; (2) Hines's need for short and simple instructions is of no moment, because that limitation is already factored into the Grid, due to its being based upon the demands of unskilled work; (3) Hines's need for a job situation with clear expectations and reasonable supervision is also factored into the Grid, by the regulatory descriptions of unskilled work as work that can be learned in thirty days, see 20 C.F.R. § 404.1568(a), and/or work "that can be performed after a short demonstration," 20 C.F.R. Part 404, Subpart P, Appx. 2 §202.00(a); and (4) an ability to respond appropriately

14

only to simple and routine changes is fully compatible with the
demands of unskilled work.

The issue before the court is whether, under the
circumstances of this case, the ALJ was correct in basing his
step-five determination on the medical-vocational guidelines
alone.  The court of appeals has described the circumstances
under which reliance on the Grid is appropriate:

> We first note that at this stage of the
> sequential process prescribed by 20 C.F.R. §§ 405.1520
> and 416.920 [i.e., step five], the burden is on the
> [Commissioner] to demonstrate that there are jobs in
> the national economy that claimant can perform.  See
> Ortiz v. Secretary of Health and Human Services, 890
> F.2d 520, 524 (1st Cir. 1989).  Where a claimant's
> impairments involve only limitations in meeting the
> strength requirements of work, the Grid provides a
> "streamlined" method by which the Secretary can carry
> this burden.  Ortiz, 890 F.2d at 524; Sherwin v.
> Secretary of Health and Human Services, 685 F.2d 1, 4
> (1st Cir. 1982).  Where a claimant has nonexertional
> impairments in addition to exertional limits, the Grid
> may not accurately reflect the availability of jobs
> such a claimant could perform.  Ortiz, 890 F.2d at
> 524; Gagnon v. Secretary of Health and Human Services,
> 666 F.2d 662, 665 n.6 (1st Cir. 1981).  The question
> whether the Secretary may rely on the Grid in these
> kinds of situations depends on whether claimant's
> nonexertional impairment "significantly affects [a]
> claimant's ability to perform the full range of jobs"
> at the appropriate strength level.  Lugo v. Secretary
> of Health and Human Services, 794 F.2d 14, 17 (1st
> Cir. 1986) (per curiam); Ortiz, 890 F.2d at 524.  If
> the occupational base is significantly limited by a
> nonexertional impairment, the Secretary may not rely
> on the Grid to carry the burden of proving that there
> are other jobs a claimant can do.  Id.  Usually,
> testimony of a vocational expert is required.  Id.

Heggarty v. Sullivan, 947 F.2d 990, 995-96 (1st Cir. 1991)

(subsequent history omitted).  Ortiz, in turn, elaborated on the

use of the Grid in situations involving non-exertional

limitations:

> In cases where a nonexertional impairment
> "significantly affects claimant's ability to perform
> the full range of jobs" he is otherwise exertionally
> capable of performing, Lugo, 794 F.2d at 17, "the
> Secretary must carry his burden of proving the
> availability of jobs in the national economy by other
> means," Gagnon, 666 F.2d at 665 n.6, typically through
> the use of a vocational expert.  See, e.g., Burkhart
> v. Bowen, 856 F.2d 1335, 1340-41 (9th Cir. 1988);
> Burgos Lopez [v. Sec'y of Health & Human Servs.], 747
> F.2d at [27,] 42 [(1st Cir. 1984)]; Sherwin, 685 F.2d
> at 3.  On the other hand, should a nonexertional
> limitation be found to impose no significant
> restriction on the range of work a claimant is
> exertionally able to perform, reliance on the Grid
> remains appropriate.  See, e.g., Caldarulo v. Bowen,
> 857 F.2d 410, 413 (7th Cir. 1988); Rodriguez Pagan v.
> Secretary of Health and Human Services, 819 F.2d 1, 3-
> 4 (1st Cir. 1987) (per curiam); Borrero Lebron v.
> Secretary of Health and Human Services, 747 F.2d 818,
> 818-20 (1st Cir. 1984) (per curiam).

Ortiz, 890 F.2d at 524 (subsequent history omitted).

While Hines cites both Ortiz and Heggarty in her motion to

reverse, she cites Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000),

for the proposition that

> when there are non-exertional impairments the
> Commissioner must either rely on vocational testimony
> or give notice of the intention to take official
> notice of the fact that the claimant's non-exertional
> impairments do not significantly erode the
> occupational base noticed in the grids and provide the

> claimant an opportunity to offer evidence and argument
> in opposition to this conclusion.

Cl.'s Mot. to Reverse (doc. no. 9), at 7-8.  Because <u>Sykes</u> is

not the law of this circuit, and conflicts with <u>Ortiz</u> and

<u>Heggarty</u>, which are the law of this circuit, Hines's citation of

the Third Circuit's opinion in <u>Sykes</u> does nothing to advance her

argument.

Returning to the law of this circuit, when determining

whether a mental impairment imposes a significant restriction on

the work a claimant is exertionally able to perform, the ALJ's

"inquiry actually entails two separate determinations: (1)

whether a claimant can perform close to the full range of

unskilled work, and (2) whether he can conform to the demands of

a work setting, regardless of the skill level involved."  <u>Ortiz</u>,

890 F.2d at 526.  With regard to the first inquiry,

> the Secretary has outlined the mental capabilities
> required for unskilled work as follows:
>
> > The basic mental demands of competitive
> > remunerative unskilled work include the abilities
> > (on a sustained basis) to understand, carry out,
> > and remember simple instructions; to respond
> > appropriately to supervision, coworkers, and
> > usual work situations; and to deal with changes
> > in a routine work setting.  A substantial loss of
> > ability to meet any of these basic work-related
> > activities would severely limit the potential
> > occupational base.

Id. (quoting Social Security Ruling ("SSR") 85-15, 1985 WL
56857, at *4 (S.S.A. 1985)).  "The second inquiry concerns a
claimant's ability to cope with the demands of any work
environment."  Irlanda Ortiz, 955 F.2d at 770.  According to SSR
85-15, "these demands include the need to be punctual and to
attend work on a regular basis, the ability to accept
supervision and the capacity to remain in the work place for an
entire day."  Irlanda Ortiz, 955 F.2d at 770.

     Hines's most specific argument against the ALJ's
determination that her mental impairments did not significantly
erode the occupational base is her assertion that Dr. Martin's
opinion that she had moderate limitations in concentration,
persistence and pace required the ALJ to take testimony from a
VE.  For that proposition, she relies on an unpublished out-of-
circuit decision, Chapa v. Astrue, No. 2:05-CV-0253, 2008 WL
952947 (N.D. Tex. Apr. 8, 2008).  That case, however, is
distinguishable.  In Chapa, "the ALJ did not find the
nonexertional impairments had no impact, nor did he find that
they had an insignificant impact."  Id. at *6.  Here, of course,
the ALJ did make such a finding.  The reversible error in Chapa
was the ALJ's

          determination that the plaintiff's nonexertional
          mental impairments, in particular, his borderline
          intellectual abilities and his moderate impairment in

the area of concentration, persisten[ce] and pace,
limited the plaintiff to one to two step tasks.

Id. According to the court in Chapa, the ALJ erred by

"ventur[ing] into the realm of vocational expert testimony."

Id. Here, while the ALJ found that Hines's moderate limitations

in concentration, persistence, and pace did not significantly

erode the occupational base of unskilled light work, he did not

take the extra step of translating that limitation into specific

abilities, which is how the ALJ in Chapa usurped the role of a

VE.

More importantly, the ALJ's determination in this case has

direct support in Ortiz.  In that case, "[t]he ALJ determined

that Ortiz's dysthymic disorder was a 'significant mental

impairment' that 'did not allow the claimant to perform a full

range of light work.'"  890 F.2d at 525.  Notwithstanding that

finding, the court of appeals affirmed the ALJ's use of the Grid

to make a determination that Ortiz was not disabled.  See id. at

528.  In discussing the "claimant's ability to accommodate the

demands of a work setting per se," id. at 527, the court

reported that the

claimant was "moderately limited" in his ability: (1)
to maintain attention and concentration for extended
periods; (2) to perform activities within a schedule,
maintain regular attendance, and be punctual within
customary tolerances; and (3) to complete a normal
workday without unreasonable interruptions.

Id.  Despite those moderate limitations, which exceed those of
Hines, the court of appeals "agree[d] with the ALJ's conclusion
that, apart from his being relegated to jobs of an unskilled
nature, 'the claimant's capacity for the full range of light
work was not significantly compromised by his additional
nonexertional limitations.'"  Id.  Based on Ortiz, this court
concludes that that Hines's moderate limitations in
concentration, persistence, and pace did not require the ALJ to
elicit testimony from a VE.  See also Falcon-Cartagena v. Comm'r
of Soc. Sec., 21 F. App'x 11, 14 (1st Cir. 2001) (affirming
ALJ's reliance on the Grid to determine that a claimant was not
disabled where "the RFC and PRTF reports indicate[d] that
claimant was at the most moderately limited in areas of
functioning required for unskilled work).

Hines's argument that the number and seriousness of her
limitations required VE testimony is also unavailing.  For one
thing, as explained above, the principal authority she cites,
Sykes, does not reflect the law of this circuit.  Beyond that,
there is substantial evidence in the record to support a
determination that Hines "can perform close to the full range of
unskilled work," Ortiz, 890 F.2d at 526, and that she "can

conform to the demands of a work setting, regardless of the skill level involved," id.

Turning to the requirements of unskilled work, as described in SSR 85-15, Dr. Martin's RFC assessment is evidence that Hines had the ability to understand, carry out, and remember simple instructions. See Tr. 416. That assessment is also evidence that Hines was able to respond appropriately to supervision, coworkers, and usual work situations. See id. Finally, SSR 85-15 requires a claimant to be able "to deal with changes in a routine work setting," 1985 WL 56857, at *4, and Dr. Martin said that Hines was "able to respond appropriately only to simple and routine changes in a work setting," Tr. 416. The difference between "changes in a routine work setting" and "simple and routine changes in a work setting" is not so great that the ALJ was required to elicit VE testimony on that point. Accordingly, the ALJ did not err in determining that Hines had the capacity to perform nearly the full range of unskilled work.

There is also substantial evidence that Hines had the ability to conform to the demands of any work environment, as described in SSR 85-15. Dr. Martin's summary conclusions show that Hines had no significant limitation on her ability to get to work regularly. See Tr. 414. Both his Summary Conclusions and his RFC assessment indicate that Hines was able to cope with

supervision.  See Tr. 415, 416.  Similarly, Dr. Martin's RFC

assessment indicates that while sustaining an ordinary routine,

Hines was able to remain in the workplace for a full day.  See

Tr. 415.  So, as with his determination that Hines had the

capacity for a nearly full range of unskilled work, the ALJ did

not err in determining that Hines had the capacity to meet the

general demands of a work environment.

To be sure, Dr. Martin's RFC includes several shadings and

qualifications, but none is of any analytical significance.  As

the Commissioner correctly points out, Dr. Martin's statement

that Hines was limited to understanding, remembering, and

carrying out short and simple instructions is fully consistent

with the ability to perform unskilled work.  See SSR 85-15, 1985

WL 56857, at *4; cf. Prescott v. Soc. Sec. Admin. Comm'r, No.

1:09-cv-00522-JAW, 2010 WL 4259001, at *10 (D. Me. Oct. 21,

2010) ("A nonexertional mental limitation to simple tasks

corresponds with unskilled work, so a simple tasks limitation

does not reduce the unskilled light and sedentary occupational

bases.").  Dr. Martin's statement that Hines, "in a simple job

situation, with clear expectations, and reasonable supervision,

. . . is able to maintain attention on task over extended

periods and to perform activities within a schedule," Tr. 416,

reflects, at most, a moderate limitation in the areas of

concentration and keeping a schedule.  But, as Ortiz holds,
moderate limitations in those areas do not prohibit an ALJ from
relying on the Grid.  See 890 F.2d at 527.  The court has
already dealt with Dr. Martin's statement about Hines's ability
"to respond appropriately only to simple and routine changes in
a work setting."

The bottom line is this.  The First Circuit has
"caution[ed] that an ALJ typically should err on the side of
taking vocational evidence when [a significant nonexertional]
limitation present."  Ortiz, 890 F.2d at 528.  Such evidence
might have been helpful in this case, but, based on Ortiz, the
ALJ's decision to do without it was not a reversible error.

### 3. The ALJ's Credibility Assessment

Hines next argues that the ALJ's credibility assessment did
not properly address the Avery factors and was otherwise
inadequate.  The Commissioner, in turn, contends that
substantial evidence supported the ALJ's credibility finding.
The ALJ's credibility assessment provides no basis for a remand
but not necessarily for the reasons given by the Commissioner.

Hines's basic argument is that the ALJ's credibility
assessment falls short of the standard articulated by this court
in Weaver v. Astrue, No. 10-cv-340-SM, 2011 WL 2580766 (D.N.H.

May 25, 2011), and by other courts in other cases.  Indeed, the
ALJ's credibility assessment does appear to be missing several
of the components identified in Weaver as being essential to a
properly supported credibility assessment.  See Weaver, 2011 WL
2580766, at *5-6.

But, as Hines acknowledges, the ALJ's decision in this case
lacks something else that was present in Weaver: an actual
statement by the claimant to which the ALJ directed a
credibility assessment.  Moreover, Hines's motion does not clear
things up much at all.  She does not point to any statement she
made that the ALJ deemed not to be credible that, if deemed
credible, would have compelled a different decision by the ALJ.
In Weaver, for example, the claimant said that he needed to lie
down for two hours every day, and the VE testified that he knew
of no jobs that could be performed by a person who needed to lie
down for two hours a day.  See 2011 WL 2580766, at *6.  Hines
has identified nothing comparable in this case.  Because the
ALJ's credibility assessment is not tethered to any specific
statement by Hines that the ALJ found to lack credibility, that
assessment gives the impression of being boilerplate rather than
an analysis directed to the facts and circumstances of this
case.  That is, it appears to be mere surplussage.  As a result,
its inadequacies provide no basis for remand.

24

4. Fibromyalgia

In the last paragraph of the narrative supporting his step-two determination, the ALJ wrote:

> The claimant was seen in March, 2010 for symptoms of
> fibromyalgia but there is no indication that symptoms
> from this condition have lasted for a consecutive
> period of 12 or more months or are expected to last
> for a consecutive period of 12 or more months.

Tr. 11 (citation to the record omitted).  Presumably for that reason, the ALJ did not include fibromyalgia as one of Hines's severe impairments.  See Tr. 10.

Hines argues that the ALJ erred by determining that her fibromyalgia was not a severe impairment.  The Commissioner contends that: (1) substantial evidence supports the ALJ's determination that Hines's fibromyalgia did not meet the twelve-month durational requirement for severe impairments; and (2) even if Hines's fibromyalgia was a severe impairment, the ALJ's failure to list it as such was a harmless error.  The Commissioner's second argument carries the day.

It is well established in this circuit "that the Step 2 severity requirement is . . . to be a de minimis policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).  Under Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (S.S.A. 1985), "a finding of 'non-severe' is only

to be made where 'medical evidence establishes only a slight
abnormality or combination of slight abnormalities which would
have no more than a minimal effect on an individual's ability to
work.'"  McDonald, 795 F.2d at 1124.  In other words, proper
application of step two should "do no 'more than allow the
[Commissioner] to deny benefits summarily to those applicants
with impairments of a minimal nature which could never prevent a
person from working.'"  Id. at 1125 (quoting Baeder v. Heckler,
768 F.2d 547, 553 (3d Cir. 1985)) (emphasis added).  "If an
adjudicator is unable to determine clearly the effect of an
impairment or combination of impairments on the individual's
ability to do basic work activities, the sequential evaluation
process should not end" at step two.  SSR 85-28, 1985 WL 56856,
at *4.  Here, of course, the sequential evaluation process did
not end at step two.

     If Hines's claim for benefits rested solely on her
fibromyalgia, then, arguably, the ALJ should have deemed that
impairment severe, which he could have done by reading the
record more generously or by drawing inferences from that record
that were favorable to Hines.  But where, as here, the ALJ found
other severe impairments, and his analysis proceeded to the
determination of an RFC, his decision not to deem Hines's

fibromyalgia a severe impairment was, at worst, a harmless error.

That is because "[i]n assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 86-8p, 1996 WL 374184, at *5 (S.S.A. 1996); see also Hickman v. Comm'r of Soc. Sec. Admin., 399 F. App'x 300, 302 (9th Cir. 2010) ("Any error in the ALJ's failure to include a reading disorder as one of Hickman's severe impairments at step two of the analysis is harmless.  The ALJ found Hickman suffered from other severe impairments and, thus, step two was already resolved in Hickman's favor.") (citing Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)).  As the Court of Appeals for the Eleventh Circuit has explained:

> Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires.  See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. [1983]) (applying the harmless error doctrine to social security cases); Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) ("the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two) (emphasis added).

> Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.  Instead, at step three, the ALJ is

> required to demonstrate that it has considered all of
> the claimant's impairments, whether severe or not, in
> combination.  See id.; Bowen v. Heckler, 748 F.2d 629,
> 635 (11th Cir. 1984) (explaining that the ALJ must
> make "specific and well-articulated findings as to the
> effect of the combination of impairments").

Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th

Cir. 2010) (footnote omitted).

Here, the ALJ noted the medical evidence of Hines's

fibromyalgia in his decision.  See Tr. 11.  Thus, there is

evidence in the record to suggest that the ALJ did consider

Hines's fibromyalgia when he determined her RFC, and nothing to

suggest that he did not.  If the ALJ erred by failing to deem

Hines's fibromyalgia a severe impairment, a question the court

need not decide, that error was harmless.  The ALJ did not deny

Hines's claim due to the lack of a severe impairment, see SSR

85-28, 1985 WL 56856, at *4, and there is no support in the

record for a determination that the ALJ did not comply with SSR

86-8p.  Accordingly, Hines's step-two argument is unavailing.

### Conclusion

Because the ALJ has committed neither a legal nor a factual

error in evaluating Hines's claim, see Manso-Pizarro, 76 F.3d at

16, I recommend that: (1) Hines's motion for an order reversing

the Commissioner's decision, doc. no. 9, be denied; and (2) the

Commissioner's motion for an order affirming his decision, doc. no. 12, be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

March 26, 2012

cc:  Karen B. Fitzmaurice, Esq.
     Francis M. Jackson, Esq.
     T. David Plourde, Esq.